**SIGNED this 20 day of August, 2009.**

_____/s/ Marcia P. Parsons_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

In re

| | |
|---|---|
| DANNY HUNT d/b/a The Gold Man and Scuggs Jewelers, | No. 99-21805 |
| | Chapter 11 |
| Debtor. | |
| DANNY HUNT, | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 09-5008 |
| L.A.J., INC., | |
| Defendant. | |

## M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Dean Greer, Esq. | Joseph B. Lyle, Esq. |
| Dean Greer & Associates | Hale & Lyle |
| Post Office Box 3708 | Post Office Box 274 |
| Kingsport, Tennessee 37664 | Bristol, Tennessee 37621 |
| *Attorney for Danny Hunt* | *Attorney for LAJ, Inc.* |

**Marcia Phillips Parsons, United States Bankruptcy Judge.** In this adversary proceeding, the plaintiff Danny Hunt ("Debtor") seeks: (1) sanctions against defendant LAJ, Inc. ("LAJ") for its alleged violation of the 11 U.S.C. § 524(a) discharge injunction; (2) a determination that LAJ's state court judgment against him is void; and (3) an order enjoining LAJ's enforcement of its judgment. Both parties have moved for judgment on the pleadings, with LAJ's motion based on the assertion that this court lacks jurisdiction pursuant to the *Rooker-Feldman* doctrine. Because the court concludes, as discussed hereafter, that the debt LAJ seeks to collect from the Debtor was not discharged, LAJ's motion for judgment on the pleadings will be granted and the Debtor's denied. This is a core proceeding. See 28 U.S.C. § 157(b)(2)(O).

I.

On July 14, 1999, the Debtor, doing business as The Gold Man and Scruggs Jeweler, filed a petition for bankruptcy relief under chapter 11. LAJ was listed as a creditor with an unsecured, nonpriority claim in the amount of $61,652 and filed a proof of claim in this amount. During the confirmation process, LAJ objected to the Debtor's disclosure statement and proposed plan of reorganization, but withdrew its objection after the proposed plan was amended. On August 16, 2000, the court entered an order confirming the Debtor's First Amended Plan of Reorganization ("Plan").

Under the Plan, unsecured, nonpriority creditors holding claims over $500, which would include LAJ, were placed in Class V. With respect to this class, the Plan provided that beginning 180 days after the confirmation order became final (10 days after its entry), the Debtor would pay $2,000 per month for 48 months into an account, from which a pro rata quarterly distribution to Class V creditors would be made. The Plan specified that this distribution "represents a minimum 24 per-cent payoff of unsecured claims as of the date of filing."

The Debtor defaulted under the plan, and LAJ received no payments. On June 29, 2004, LAJ filed a complaint against the Debtor in the circuit court for Sullivan County, Tennessee "alleging that the debtor acknowledged LAJ's claim by way of the Plan and a method of payment of the claim under the Plan; that the Debtor breached the Plan by failing to make any payment in accordance therewith; and that [the Debtor] was liable as a result of the breach." (LAJ's

Counterclaim, ¶ 7.) When the Debtor failed to answer the complaint, LAJ moved for default judgment, setting the motion for hearing on January 28, 2005. Four days before the hearing, the Debtor filed with the state court a Suggestion of Bankruptcy, wherein he stated that he had filed for bankruptcy relief under chapter 13 in the Southern District of Florida on January 10, 2005. Because of the bankruptcy filing, the scheduled state court hearing did not go forward.

On January 31, 2005, the Debtor's chapter 13 case in Florida was dismissed due to the Debtor's failure to file the required statements and schedules. Upon learning of the dismissal, LAJ reset for May 13, 2005, the hearing on its motion for default judgment pending in the Tennessee state court. The Debtor appeared at the hearing and requested that he be given time to obtain counsel and file an answer. The state court thereafter entered an order providing the Debtor an extension of time until September 19, 2005, in which to file an answer. When the Debtor failed to file an answer or otherwise respond, the court entered an order on October 14, 2005, granting LAJ a default judgment against the Debtor in the amount of $61,652. No appeal was taken from this order.

Subsequently, LAJ recorded its judgment against the Debtor with the Sullivan County Register of Deeds, thereby creating a judgment lien on five parcels of real property owned by the Debtor in Sullivan County, Tennessee. On September 19, 2008, LAJ began execution on its judgment lien, resulting in the sheriff placing the Debtor's realty for sale by auction. To stop the sale, the Debtor filed a motion with this court to reopen his chapter 11 case, which motion was granted by order entered January 27, 2009.

The Debtor commenced the instant adversary proceeding against LAJ on February 17, 2009. He alleges in the complaint that because under 11 U.S.C. § 1141(d) all preconfirmation debt is discharged upon confirmation except as otherwise provided by the Plan, his $62,652 debt to LAJ was discharged at confirmation, with the exception of 24% of its claim that LAJ was to receive under the Plan. Because the state court judgment obtained by LAJ was in the amount of its entire prepetition claim against the Debtor, rather than 24% of this claim, the Debtor asserts that LAJ violated the discharge injunction of § 524(a) of the Bankruptcy Code. The Debtor seeks an order finding LAJ in contempt, determining that LAJ's judgment is invalid and void *ab initio*, directing

3

LAJ to release its recorded judgment lien, and awarding the Debtor compensatory damages including attorney fees.

In its answer, LAJ denies any violation of the discharge injunction or that the Debtor is entitled to the requested relief. According to LAJ, its default judgment was based upon the Debtor's Plan obligation rather than the prepetition debt and is therefore valid. LAJ also asserts that the Debtor obtained confirmation of his Plan by fraud and requests the court to revoke the Debtor's discharge on this basis. Lastly, LAJ asks this court to confirm its state court judgment against the Debtor and its judgment lien, and award LAJ attorney fees.

In response to LAJ's counterclaim, the Debtor denies the allegations of fraud and otherwise contends that any effort to revoke the discharge on this basis is untimely because it was not asserted within the first 180 days after entry of the confirmation order as required by § 1144 of the Bankruptcy Code.

On June 29, 2009, the Debtor filed the motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), incorporated in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b), that is presently before the court. The Debtor asserts that there are no facts in dispute, and that based on the pleadings, he is entitled to the relief that he seeks against LAJ. Specifically, the Debtor argues that notwithstanding LAJ's contention that its state court action was designed solely to collect the amount owed it by the Debtor under the Plan, which the Debtor calculates would be $14,796.48 ($61,652 x 24%), the fact that LAJ obtained a judgment for $61,652, the exact amount of its prepetition claim, undeniably establishes that LAJ collected not only the amount it was owed under the Plan, but also the discharged balance of its prepetition claim, i.e., $46,855.52 ($61,652-$14,796.48), thereby violating the discharge injunction.

In response, LAJ filed its own motion for judgment on the pleadings on July 20, 2009. Generally, LAJ does not disagree with the Debtor's recitation of the facts and his assertion that the facts are undisputed in this case. The only exception is the Debtor's characterization of what LAJ would receive under the Plan. LAJ denies that the Plan provides that unsecured creditors, including itself, were to receive 24% of their claims under the Plan such that each creditor's postconfirmation, postdischarge claim became 24% of its prepetition claim. According to LAJ, each Class V creditor

4

was to receive a pro rata distribution of the $96,000 the Debtor was to pay into the Plan, with the distribution being a "minimum" of 24% of a creditor's prepetition claim. Based on this language, LAJ argues that it was not required to limit itself to a 24% recovery in a postconfirmation collection action "when in fact its actual right to payment could have been more than this amount under the terms of the Plan." LAJ maintains that the state court had jurisdiction to interpret the Plan and enter judgment in its favor and that this court lacks jurisdiction to disturb its judgment under the *Rooker-Feldman* doctrine.

Before addressing the merits of the parties' motions for judgment on the pleadings, the court must first consider LAJ's assertion that this court lacks jurisdiction to consider the parties' dispute. In its *Hamilton* decision rendered last year, the Sixth Circuit Court of Appeals held that "a state-court judgment that modifies a discharge in bankruptcy is void ab initio and the *Rooker-Feldman* doctrine would not bar federal-court jurisdiction over the Debtor's complaint" that sought to enjoin a state court judgment rendered against the debtor. *Hamilton v. Herr (In re Hamilton)*, 540 F.3d 367, 376 (6th Cir. 2008). In reaching this conclusion, the court first explained that:

> [T]he *Rooker-Feldman* doctrine does not prohibit all federal cases that are somehow related to a prior state-court decision. "If a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"

*Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517 (2005)). Noting that "the *Rooker-Feldman* doctrine provides no protection in areas where Congress has explicitly endowed federal courts with jurisdiction," *id.* at 372, the Sixth Circuit found this explicit jurisdictional grant in § 524(a) of the Bankruptcy Code, which states in part that "[a] discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." *Id.* (quoting 11 U.S.C. § 524(a)(2)). Citing a tension between this statute and 28 U.S.C. § 1334(b), which conveys concurrent jurisdiction to state courts to determine the nondischargeability of debts, and the *Rooker-Feldman* doctrine's goal of preserving the proper respect for state-court decisions, the Sixth Circuit instructed federal courts to resolve this tension by first asking whether the debt in

question that the creditor seeks to collect was discharged in the bankruptcy case. *Id.* at 373-75. "If the debt was discharged, then the state-court judgment was a modification of the discharge order and is void ab initio. If the debt was not discharged pursuant to the bankruptcy court's discharge order, then the state-court judgment was not a modification of the discharge order and the *Rooker-Feldman* doctrine would bar federal court jurisdiction." *Id.* at 376.

Applying this directive to the facts of the present case, undeniably the prepetition debt owed by the Debtor to LAJ was discharged in the Debtor's bankruptcy case. Section 1141(d)(1) of the Bankruptcy Code provides that confirmation of a chapter 11 plan discharges the debtor from any debt that arose before the date of such confirmation "except as otherwise provided . . . in the plan, or in the order confirming the plan." 11 U.S.C. § 1141(d)(1)(A).[1] Pursuant to this provision, confirmation had the dual effect of discharging LAJ's preconfirmation claim and replacing it with LAJ's plan claim. *See In re Troutman Enters., Inc.*, 253 B.R. 8, 11 (B.A.P. 6th Cir. 2000) ("The plan is essentially a new and binding contract between the reorganized debtor and its creditors.") (citing *In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir. 1992) ("Once the reorganization plan is approved by the bankruptcy court, each claimant gets a 'new' claim, based on whatever treatment is accorded to it in the plan itself."). Thus, while Debtor's original obligation to LAJ was discharged pursuant to confirmation of his chapter 11 plan, the plan itself created a new debt owed by the Debtor to LAJ. Further, "[i]f a reorganized debtor defaults under a plan, creditors have several options, including enforcing the plan terms in any court of competent jurisdiction." *In re Troutman Enters. Inc.*, 253 B.R. at 11; *see also In re Xofox Industries, Ltd.*, 241 B.R. 541, 543 (Bankr. E.D. Mich. 1999) ("It is black-letter law that if a reorganized debtor defaults on plan payments to an unsecured creditor, the creditor can pursue the debtor for the restructured debt under the plan."). Accordingly, it would appear that, without question, LAJ could rightfully pursue in state court collection of the Plan obligation owed it by the Debtor. *See In re Landreth Lumber Co.*, 393 B.R. 200, 205 (Bankr. S.D. Ill. 2008) ("[T]he state court had concurrent jurisdiction to interpret a

---

[1] Under the 2005 amendments to the Bankruptcy Code, which are inapplicable herein because the Debtor's bankruptcy case was filed prior to the effective date of the amendments, confirmation of a chapter 11 plan of an individual debtor does not automatically effect a discharge of preconfirmation debt. Rather, discharge does not occur until completion of all payments under the plan unless the court, for cause, orders otherwise. *See* 11 U.S.C. § 1141(d)(5)(A).

6

provision of the confirmed plan as a matter of contract law . . . ."); *Kmart Creditor Trust v. Conaway (In re Kmart Corp.)*, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004) ("[S]tate courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.").

LAJ maintains that the state court judgment it obtained against the Debtor was not based on the debt that was discharged in the Debtor's chapter 11 case but, rather, was based on Debtor's Plan obligation, with the state court exercising its jurisdiction to determine the proper amount of this obligation. Because this judgment amount is the same amount that was discharged by confirmation of his chapter 11 plan, the Debtor argues that LAJ's judgment is for the discharged debt and is, therefore, void, notwithstanding that the state court action was premised on the Plan obligation. However, as explained in *Hamilton*, the determinative question in this case is whether the debt LAJ is seeking to collect was discharged in the bankruptcy case. *See In re Hamilton*, 540 F.3d at 375 ("[T]he state-court judgment . . . would constitute a modification of the discharge in bankruptcy only if the debt was actually discharged pursuant to the bankruptcy court's discharge order."). Because LAJ's judgment is for the Plan obligation, a debt that was *not* discharged, the judgment is not a modification of this court's discharge order. Granted, the amounts of the two debts, the discharged debt and the Plan debt, are the same, but this fact does not render the state court judgment void since the judgment was based on the Debtor's contractual obligation to LAJ under the Plan, rather than the preconfirmation obligation that had been discharged. And, regardless of whether the state court's interpretation of the Plan was correct, whether the Plan language of "a minimum 24 per-cent payoff of unsecured claims as of the date of filing" meant strictly 24% or potentially something greater as the state court found as indicated by the amount of the judgment, the court had the jurisdiction to make this determination. Accordingly, the *Rooker-Feldman* doctrine bars reconsideration of the state court's ruling by this court.[2] *See In re Hamilton*, 540 F.3d at 376 (citing

---

[2] Rather than as a jurisdictional issue, a possible alternative way of viewing this case is through the lens of preclusion. The issue in the state court action was what the amount of the debt owed by the Debtor to LAJ under the Plan. Any argument by the Debtor that a pro-rata distribution under the Plan would have resulted in less than full payment to LAJ should, and could have been asserted in the state court action. Res judicata would bar this court from concluding that the state court erred in its interpretation of the Plan. *See, e.g., Radermacher v. Sullivan (In re Sullivan)*, 122 B.R. 720, 723 (Bankr. D. Minn. 1991) (Under the doctrine of res judicata or claim preclusion, the
(continued...)

*In re Bayhi*, 528 F.3d 393 (5th Cir. 2008) (holding that lower federal courts must abstain from reversing state court judgments affecting nondischarged debts because such judgments do not modify the discharge in bankruptcy)).

Admittedly, there is language in *Hamilton* that states that "[i]f a state court incorrectly interprets a bankruptcy court's discharge order then the state court is effectively modifying the discharge order, and 'they have no authority to vary the terms of the discharge.'" *Id.* at 373 (quoting *In re Pavelich*, 229 B.R. 777, 783 (B.A.P. 9th Cir. 1999)). However, unlike *Hamilton*, where the issue before the court was whether the debtor's discharge included his former wife's indemnification claim, with the state court incorrectly determining that it did not, the present case involves no interpretation by the state court of this court's discharge order. Rather, the state court herein merely determined the *amount* of the Debtor's contractual obligation provided for by the Plan, a contractual obligation the Debtor concedes was not discharged. The Debtor's disagreement with the *amount* of the judgment imposed against him by the state court provides no basis for relief from this court.[3]

---

[2](...continued)
debtor was precluded by the state court judgment from relitigating in bankruptcy court the existence, validity and amount of debt.).

[3] In its brief in support of its motion for judgment on the pleadings, LAJ cites *In re Goetzman*, wherein the Eighth Circuit Court of Appeals held that the bankruptcy court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine to determine whether a state court judgment against former chapter 12 debtors improperly included a portion of a debt discharged in their bankruptcy case. *See Goetzman v. Agribank, FCB (In re Goetzman)*, 91 F.3d 1173 (8th Cir. 1996). While the result in *Goetzman* undeniably supports LAJ's position, the ruling is based on the conclusion that a federal court lacks jurisdiction to review a state court judgment to determine whether it was a debt discharged in bankruptcy, *id.* at 1178 ('if the debt . . . was discharged, the issue should have been vigorously raised in the state court action"), a conclusion rejected in *Hamilton* as previously discussed. Nonetheless, it is note-worthy that the debt at issue in *Goetzman* appeared to be a long-term mortgage, which is excepted from discharge in a chapter 12 case, *see* 11 U.S.C. § 1228(a), and therefore, the post-discharge collection of that debt would not have been an impermissible modification of the discharge order under the *Hamilton* standard. As in the present case, the real issue in *Goetzman* was the *amount* of the particular debt in question. Thus, the *Goetzman* court's ultimate determination that it was without jurisdiction to second guess the state court on this issue is not inconsistent with *Hamilton*.

II.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), as incorporated by Fed. R. Bankr. P. 7012(b) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." In considering such a motion, all well-pleaded material allegations contained in the complaint must be accepted as true. *See United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). The motion will be granted when no material issue of fact exists and the movant is entitled to a judgment as a matter of law. *See, e.g., Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

In his answer to LAJ's counterclaim, the Debtor admits that LAJ's state court complaint alleged the Debtor's Plan obligation to LAJ, the Debtor's breach of that obligation, and the Debtor's liability as a result of the breach. Moreover, the Debtor accepts as true for purposes of the present motions the factual allegations of the pleadings which include the statement in LAJ's answer that it "obtained a default judgment against the debtor based upon the breach of the Confirmed Plan and not upon a pre-petitioned debt." These statements conclusively establish that the discharge injunction was not violated. Instead of obtaining a judgment on the prepetition, discharged debt as the Debtor argues, LAJ obtained a judgment based on the new postpetition, contractual obligation owed by the Debtor to LAJ under the Plan. Regardless of whether the state court accurately interpreted the Plan in fixing the judgment amount, this court lacks jurisdiction to vacate or modify that judgment in any respect. Accordingly, LAJ is entitled to judgment on the pleadings in its favor on the Debtor's complaint. Concerning LAJ's counterclaim seeking revocation of the order confirming the Plan, that claim is now moot because LAJ has been made whole under the Plan in its obtaining the state court judgment.[4]

---

[4] In any event, it would appear that LAJ's counterclaim for revocation was untimely. *See* 11 U.S.C. § 1144 ("On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.").

### III.

An order will be entered consistent with this memorandum, denying the Debtor's motion for judgment on the pleadings, granting LAJ's motion and dismissing both the complaint and counterclaim.

# # #